UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN ERIN BINNS </br></br> Plaintiff. </br></br> v. </br></br> FEDERAL BUREAU OF INVESTIGATION </br> Washington DC, 20535 </br></br> DEPARTMENT OF JUSTICE </br> Washington DC, 20530 </br></br> CENTRAL INTELLIGENCE AGENCY </br> Washington DC, 20505 </br></br> Defendants. | Case: 1:20-cv-03349 </br> Assigned To : Unassigned </br> Assign. Date : 11/17/2020 </br> Description: FOIA/Privacy Act. (I-DECK) |



RECEIVED Mail Room
NOV 17 2020
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## COMPLAINT

1. This is an action under the Freedom of Information Act, 5 USC § 552 ("FOIA") and the Privacy Act, 5 USC § 552a. Plaintiff John Erin Binns seeks to compel the Federal Bureau of Investigation ("FBI"), the Department of Justice ("DOJ"), and the Central Intelligence Agency ("CIA") to comply with their obligations under FOIA and the Privacy Act.

## JURISDICTION AND VENUE

2. The court has jurisdiction over this action pursuant to 28 USC § 1331, 5 USC § 552a(g)(1)(B) and 5 USC § 552(a)(4)(B). Venue lies in this district under 5 USC § 552(a)(4)(B) and 5 USC § 552a(g)(5).

## PARTIES

3. Plaintiff John Erin Binns is a 20 year old victim of government experimentation and harassment, an ISIS terror suspect, and a resident of Izmir, Turkey.

4. Plaintiff is a US citizen and was born in Virginia.

5. Plaintiff is currently under investigation by the FBI's Anchorage field office for his alleged participation in the Satori botnet conspiracy. The FBI is investigating or has investigated Plaintiff for his alleged involvement in other cybercrime cases as well.

6. Defendants FBI, DOJ, and CIA are agencies within the meaning of 5 USC § 552(f) and 5 USC § 552a(a)(1).

## FACTUAL BACKGROUND

7. In 2017, Plaintiff's Skype account was subpoenaed by the FBI after an FBI Confidential Human Source ("CHS") and CIA informant named Azaiah Crosswhite gave Plaintiff's Skype username to his handler.

8. When Plaintiff's Skype account was subpoenaed, he had his Skype location set to "Latakia, Syria", and an email address ("Email #1") was tied to his account.

9. The FBI was able to find Plaintiff's real identity, as Plaintiff had previously used Email #1 on his US passport application in 2015.

10. Because Plaintiff had his Skype location set to "Latakia, Syria", the FBI believed that Plaintiff was living in Syria and opened a terrorism investigation against him.

11. The FBI sent a request through the Europol Information System and INTERPOL to sixteen countries in Europe asking for information on Plaintiff's whereabouts and his border crossings.

12. On October 11, 2017, Arthur Gong from the Department of Homeland Security interrogated Plaintiff at London Heathrow Airport regarding his alleged travel to Syria.

13. From November 2017 to January 2018, Plaintiff was allegedly a member of the Satori botnet conspiracy.

14. Three of the participants in the Satori botnet conspiracy (Aaron Sterritt, Logan Shwydiuk and Kenneth Currin Schuchman) were indicted in the District of Alaska by the DOJ in 2018 and 2019.

15. In 2018, Plaintiff left the United States and went to Izmir, Turkey through Canada and the Netherlands.

16. The CIA placed Plaintiff under physical and electronic surveillance while he was in Izmir. Several of Plaintiff's mobile phones were hacked and infected with spyware using 0-day software exploits, and Plaintiff's computer monitor was wiretapped by CIA contractors operating a TEMPEST receiver from a nearby apartment.

17. 0-day exploits are cyberattacks which use software vulnerabilities unknown to the manufacturer of a device and antivirus companies in order to remotely take control of a computer.

18. A TEMPEST receiver is any device which picks up electromagnetic emissions from a computer monitor and enables the user to view whatever is displayed on the monitor.

19. Plaintiff was assigned the CIA cryptonym "RAVEN".

20. The CIA contractors who were hired to place Plaintiff under physical surveillance broke into unoccupied apartments near Plaintiff's home using lockpicking tools.

21. In 2018, two CIA contractors broke into an unoccupied apartment facing Plaintiff's bedroom. They then recorded a naked video of Plaintiff, which was later used to try and blackmail Plaintiff into working for the CIA. This video was shown to both Azaiah Crosswhite and Kenneth Currin Schuchman.

22. In July 2018, Kenneth Currin Schuchman was working as an FBI CHS and CIA informant. Schuchman attempted to entrap Plaintiff on child pornography charges and

tried to make Plaintiff buy Stinger missiles from a fake website operated by the FBI. Schuchman also attempted to make Plaintiff click on a link to a website which contained a 0-day exploit.

23. From August 2018 to July 2019, Plaintiff was repeatedly harassed by CIA contractors, in violation of 18 USC § 2261A.

24. On several occasions, Plaintiff observed a male CIA contractor shining a red laser pointer into his room using a gun scope. On other occasions, Plaintiff observed the CIA contractors pointing a brick shaped device with buttons (a psychotronic weapon) at his head. Sometimes the CIA contractors would be wearing night vision goggles.

25. A psychotronic weapon is any portable device which uses extremely low frequency modulated SHF microwaves in order to remotely interfere with a target's nervous system.

26. On one occasion in 2018, Plaintiff saw a male CIA contractor aiming a paint sprayer at Plaintiff's bedroom window. Plaintiff then remembers feeling dizzy and witnessing two men breaking into his home. Plaintiff later woke up in his bed. Plaintiff believes that he was drugged using some type of anesthetic gas or spray by CIA contractors so that they could break into his home.

27. On multiple occasions in 2018 and 2019, Plaintiff was half-asleep in his bed and witnessed CIA contractors bringing a microwave oven with no door (a microwave oven weapon) out onto a balcony facing his bedroom. Plaintiff remembers observing a man plugging the oven into an extension cord and pointing it at his sleeping body. Plaintiff then felt a burning and shocking sensation over his entire body.

28. On one occasion in 2018, Plaintiff saw a male CIA contractor pointing a gun shaped device at his bedroom window. The CIA contractor then fired the device and a ball of energy came out of it, causing the windows in Plaintiff's bedroom to shake. Plaintiff believes that this was a pulsed energy projectile weapon.

29. On one occasion in 2019, Plaintiff observed two CIA contractors pointing a laser microphone on a tripod at his bedroom window, while Plaintiff was speaking to someone over the phone. Azaiah Crosswhite then repeated parts of this private conversation back to Plaintiff over Snapchat.

30. On July 1, 2019, Plaintiff was lured onto a ferry and became the target of an attempted extrajudicial killing by Turkish intelligence ("MIT") agents in Izmir, Turkey, as the CIA had falsely communicated to MIT that Plaintiff was an ISIS member.

31. Plaintiff escaped from the MIT agents by hiding in Alsancak Nevvar Salih Isgoren hospital. When Plaintiff's name was entered into the emergency room computer, Azaiah Crosswhite's name came up on the emergency room computer and Plaintiff's name in the database was changed to "Cock Sucker". Five police cars and MIT agents then came to the hospital, and Plaintiff was forcibly injected with haloperidol.

32. The attempt by CIA officers to have Plaintiff killed on July 1, 2019, violates Part 2.11 of Executive Order 12333 (prohibition on assassinations) and 18 USC § 241 (conspiracy against rights).

33. On July 6, 2019, Plaintiff was abducted from the Munich Airport police station in Germany by fake police officers (MIT agents) and taken to a fake mental hospital

operated by MIT in Taufkirchen Vils, Germany. Plaintiff was then put in a neurotoxic gas room. This was videotaped and livestreamed as a "destruction video" to a group of CIA officers, Azaiah Crosswhite, Jared Fazah, and Justin Anglin.

34. In October 2019, Plaintiff received multiple email messages from FBI Special Agent Elliott Peterson. One of these messages asked Plaintiff to call Peterson so that they could talk about the Satori botnet case, and another one of these messages implied that Peterson was attempting to get the Turkish police to cooperate in the investigation against Plaintiff.

35. In November 2019, Plaintiff attempted to board a flight to Germany from Antalya Airport in Turkey. Plaintiff was interrogated by the Turkish police, and Plaintiff noticed that one of the Turkish police officers had a document open on their phone. This document had the logo of the CIA, classification markings, and text. Plaintiff believes that the CIA sent out an alert to multiple countries stating that he is an ISIS terrorist.

## COUNT I - F-2019-02258: Constructive denial of access to records - CIA (FOIA/Privacy Act)

36. Plaintiff realleges paragraphs 1-35 inclusive.

37. On August 14, 2019, Plaintiff filed a FOIA/Privacy Act request with the CIA ("F-2019-02258") asking for the following information:

- All records on [Plaintiff] (CIA code name RAVEN/BLACKBIRD).
- Records regarding physical or electronic surveillance against [Plaintiff] while he was in Karsiyaka, Izmir, Turkey.

- Records regarding the use of directed energy weapons against Plaintiff.
- Records regarding Plaintiff's kidnapping in Germany and the Delta Force operation to extraordinarily render Plaintiff to Anchorage Airport from an American military base in Germany.
- Records regarding the use of informants against Plaintiff by the CIA

38. Approximately one month later, Plaintiff received a reply from the CIA for F-2019-02258. The CIA replied with a Glomar response for the portion of F-2019-02258 asking for all records on Plaintiff, and requested additional information regarding the other items in Plaintiff's request.

39. Plaintiff mailed the additional information that was requested from him (a copy of his kidnapping story) to the CIA.

40. On February 14, 2020, Plaintiff received a Glomar response for the remaining items of his request. Plaintiff appealed this response and the prior denial of his Privacy Act request to the CIA on the same day.

41. More than 20 working days have passed since Plaintiff sent in an appeal for F-2019-02258 and the CIA has not yet made a final determination regarding this request, in violation of 5 USC § 552(a)(6)(A)(i).

42. Pursuant to 5 USC § 552(a)(6)(C)(i), Plaintiff is deemed to have exhausted his administrative remedies for F-2019-02258.

**COUNT II - 1466006-001: Constructive denial of access to records - FBI and DOJ (FOIA/Privacy Act)**

43. Plaintiff realleges paragraphs 1-35 inclusive.

44. In 2020, Plaintiff filed a request ("1466006-001") with the FBI seeking any and all records on himself.

45. The FBI later responded to 1466006-001 and claimed that no records regarding Plaintiff were found in their systems.

46. On September 18, 2020, Plaintiff filed an appeal for 1466006-001 through the DOJ Office of Information Policy's Entellitrak portal.

47. Plaintiff's appeal number for 1466006-001 is A-2020-01946.

48. More than 20 working days have passed since Plaintiff submitted his appeal for 1466006-001 and the DOJ has not released any records to Plaintiff or responded in any way.

49. Pursuant to 5 USC § 552(a)(6)(C)(i), Plaintiff is deemed to have exhausted his administrative remedies for 1466006-001.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Order Defendants CIA, DOJ and FBI to produce any and all non-exempt records that are responsive to Plaintiff's FOIA/PA requests and Vaughn indices of any withheld records.

(2) Grant any further relief as this court may deem just and proper.

Respectfully submitted,

John Erin Binns

1775/4 Sk No 3/1

Karsiyaka, Izmir

35580

Turkey

binnsjohn84@gmail.com

+905488575356

**/s/ John Erin Binns**